UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

JACK KING                                    CIVIL ACTION NO. 12-cv-2251

VERSUS                                       JUDGE WALTER

N. BURL CAIN                                 MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

### Introduction

A Caddo Parish jury convicted Jack King ("Petitioner") of armed robbery using a firearm. He was adjudicated a second-felony habitual offender and sentenced to 203 years. The appellate court affirmed his conviction but reduced his sentence by five years. State v. King, 935 So.2d 354 (La. App. 2d Cir. 2006). The Supreme Court then reinstated the original sentence. State v. King, 969 So.2d 1228 (La. 2007). Petitioner also pursued a post-conviction application in state court. He now seeks federal habeas relief on several claims. For the reasons that follow, it is recommended the petition be denied.

### Background Facts

Petitioner entered the customer line at the Hibernia Bank on Greenwood Road in Shreveport, Louisiana. When he reached the teller, he handed her a pillowcase and told her to give him money. The teller hesitated because she did not realize what was happening, and Petitioner said, "I'm not playing. Give me the money. I have a gun." He then raised his shirt and showed her the handle of a handgun that was tucked in his waistband. The teller

put at least $5,000 in the pillowcase, along with a dye pack that had a sensor that would cause it to go off if it passed the door of the bank.  Petitioner took the pillowcase and left the bank, which caused the dye pack to explode and mark him and the pillowcase.

Patrick Knight was at the bank that morning to open a checking account.  From his seat in a manager's office, he happened to notice Petitioner running outside with red smoke coming from him.  The teller soon came in the office and said she had been robbed.  Knight ran to his truck and drove in the direction he saw Petitioner run.  He spotted Petitioner a few blocks away, jumped out of his truck and gave chase.  As he ran, he dialed 911 on his cell phone and reported what was happening.  Petitioner eventually stopped and Knight told him to get down on the ground.  Petitioner put up his hands, and Knight approached him slowly and took him to the ground.  Knight first learned a gun was involved when he saw it as he took Petitioner down, and Knight kicked it away.  Police arrived soon afterward and took Petitioner into custody.

Petitioner elected to testify.  He conceded that it was him on the recording of the robbery.  He admitted on cross-examination: "I did it."  He agreed that the testimony of the witnesses was correct, except he disagreed with one witness who said she saw Petitioner run away while carrying a pistol.  Petitioner said the pistol remained in his waistband the entire time.  Petitioner admitted that he had been convicted of manslaughter in 1982 and sentenced to 21 years in prison.  He said he had not yet completed his sentence, including parole, but would be through with it on the 15th of the next month.  He admitted that he was on parole for the manslaughter at the time of the bank robbery.

**Sentencing Issues**

A conviction of armed robbery carries a maximum sentence of 99 years.  La. R.S. 14:64.  Another statute provides that a five-year sentence enhancement should be imposed if the defendant is convicted of armed robbery with a firearm.  La. R.S. 14:64.3.  The jury found that Petitioner was guilty of armed robbery and that he committed the crime with a firearm.  Petitioner was then adjudicated a second-felony offender based on his prior manslaughter conviction.  Tr. 259-67.

The multiple offender adjudication subjected Petitioner to sentence enhancements. Judge Scott Crichton reviewed Petitioner's criminal history, which included older convictions in addition to the manslaughter.  He imposed the maximum penalty of 203 years, which was 198 years as a result of the multiple offender adjudication plus five years under the firearms enhancement statute.  Tr. 269-79.  Petitioner argued on direct appeal that the addition of the firearms enhancement on top of the multiple offender adjudication was erroneous, but the Supreme Court of Louisiana interpreted the relevant statutes and determined that Judge Crichton's sentence was the result of an appropriate construction of the state statutes.

Petitioner's Claim #4 complains of "double enhancement."  He contends that it is universally accepted that a sentence can only be enhanced once.  The Supreme Court of Louisiana fully reviewed this issue on appeal and interpreted the Louisiana statutes at issue to allow both the multiple offender and firearms enhancements.  Petitioner does not cite any federal authority for his argument. The habeas statute provides that a federal court may issue

a writ of habeas corpus to a state prisoner only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a). The Supreme Court has "stated many times that federal habeas corpus relief does not lie for errors of state law." Swarthout v. Cooke, 131 S.Ct. 859, 861 (2011).  Federal courts will not review a state court's interpretation of its own laws and do not sit as "super state supreme courts" to review errors of state law.  Dickerson v. Guste, 932 F.2d 1142, 1145 (5th Cir. 1991).  Habeas relief is not available on this claim.

Petitioner does invoke Apprendi v. New Jersey, 120 S.Ct. 2348 (2000), but the issue of the firearm enhancement was submitted to the jury, which made a finding in its verdict that Petitioner committed his crime while armed with a firearm.  Nothing about those proceedings potentially ran afoul of Apprendi, assuming this claim was exhausted by proper presentation to the state courts.

Petitioner's Claim #11 is that his sentence was illegal because the five-year enhancement did not specify whether or not it was to be at hard labor.  The Supreme Court of Louisiana stated in its opinion that, at the time of the robbery, the enhancement statute did not include the proviso "at hard labor," so the court specified that the five years did not include the hard labor provision.  State v. King, 969 So.2d at 1232.  It is not clear what more Petitioner wants with respect to this issue.  In any event, it is based solely upon the application of state law, so federal habeas relief is not available.

Petitioner argues in Claim #1 that he was improperly adjudicated an habitual offender. He invokes the cleansing period provision of La. R.S. 15:529.1(C), which provides that the

current offense shall not be counted as a second offense if more than 10 years have elapsed between the date of the commission of the current offense (armed robbery) and the expiration of the maximum sentence of the previous conviction (manslaughter).

Petitioner's argument is difficult to follow, but he appears to contend that it was inappropriate to use his manslaughter conviction because the sentence for it had not expired since he was still on parole for the manslaughter at the time he committed the robbery.  See Reply at Doc. 19.  Once again, Petitioner's argument is based solely on the application of state statutes rather than federal law that could give rise to habeas relief.  Furthermore, he seems to be under the mistaken impression that a prior offense cannot serve as the basis for a multiple offender enhancement unless the sentence for the prior crime was fully completed before the most recent crime was committed.  That is a misinterpretation of the statute. Defendants are often subjected to multiple offender enhancements when they commit crimes while still on supervision for the prior conviction.  See, e.g., State v. Odom, 772 So.2d 281, 293 (La. App. 2d Cir. 2000) (defendant had been on probation only eight days when he committed his second felony) and State v. Rousselle, 514 So.2d 577, 580 (La. App. 4th Cir. 1987) (defendant's sentenced was properly enhanced based on prior conviction for which he was on probation at the time of the most recent crime).  It is not necessary that the cleansing period begin to run before the prior conviction can be used for an enhancement.

**Jury Issues**

Petitioner argues in Claim #12 that the court violated La. C. Cr. P. art. 799 when it did not allow him the 12 peremptory challenges required by the statute.  The post-conviction

record includes an affidavit from defense counsel in which he testifies that his records do not indicate that the defense was denied the 12 peremptory challenges.  "In fact, I used all twelve peremptory challenges during voir dire, as the court minutes show."

Petitioner argues in Claim #13 that La. C. Cr. P. art. 771(2) was violated when one of the jurors, Ms. Jackson, stated to associates and friends that Petitioner was guilty and that she and other potential jurors discussed the robbery and related news reports.  Defense counsel testified in his affidavit that Petitioner "never informed me of any alleged juror misconduct of any kind during the trial," and he specifically did not mention Ms. Jackson behaving improperly.  Counsel said that if he had been so informed he would have reported it to the trial court.  Tr. 536A-B.

Judge Michael Pitman reviewed the affidavit from counsel, as well as the record, and determined that these claims were without merit.  Tr. 609.  The state appellate court summarily denied all of Petitioner's post-conviction claims with a statement that he had "failed to meet his burden of proving the requested relief should be granted."  Tr. 666.  The Supreme Court of Louisiana denied writs without comment.  Tr. 765.

Once again, Petitioner has not presented a claim based on federal law.  Both of these claims are based on alleged violations of the Louisiana Code of Criminal Procedure. Petitioner does not cite any federal authority or invoke any federal constitutional principles. Habeas relief is not available on these claims. In addition, there is no factual support in the record for either claim, so the state court's decision was reasonable.

**Challenge for Cause**

Petitioner argues in Claim #7 that the defense challenged prospective juror Dr. Waguespack for cause on the grounds that he followed the case closely in the news, was a customer of the bank, and had a son in law enforcement.  Petitioner argues that the trial court violated La. C. Cr. P. art. 797 when it did not rule on the challenge for cause.  Defense counsel testified in an affidavit that "there was no challenge for cause that the trial court did not rule on, including the challenge which was denied for Dr. Waguespack."  Tr. 536B.[1] Judge Pitman reviewed this claim and determined it to be without merit. Tr. 609.  Petitioner has offered nothing but his conclusory assertions to contradict the testimony of his attorney. Furthermore, he basis this issue solely on state law.

Petitioner makes a related argument that he was not allowed to view the voir dire transcript.  When an appeal is filed, counsel submits a designation of record that asks for a transcript to be prepared of those parts of the trial that are relevant to the issues that will be raised on appeal.  Counsel in this case filed a designation and asked for, among other things, a complete transcript of the trial "excluding voir dire."  Tr. 85.  Appellants in state court criminal cases ordinarily do not request a transcript of the lengthy voir dire proceedings,

---

[1] Counsel also said at trial that he used all 12 peremptory challenges, so he had to challenge for cause one juror who had some knowledge of media coverage of the crime. Tr. 109. Judge Crichton agreed that all 12 strikes were used and identified the juror at issue as Mr. Waguespack, who said the little bit he thought he might have read would not influence his ability to be fair and base his verdict on the trial evidence. Tr. 111.

which often equal or exceed the length of the trial, if there are no appellate issues stemming from that process.

Petitioner was apparently not satisfied that his attorney did not raise issues related to voir dire, so he requested an opportunity to view all transcripts.  The appellate court granted his motion.  Petitioner complains that he was sent a transcript, but the voir dire was not included.  That was plainly because counsel had not requested a transcript of those proceedings.  Petitioner states that his request to the appellate court and Supreme Court for the voir dire transcript were ignored.  He states that he needs the transcript to "perfect his post-conviction relief."

On direct appeal, a defendant has a right to a trial transcript or a functional equivalent. Griffin v. Illinois, 76 S.Ct. 585 (1956).  Petitioner was afforded the transcript requested by counsel who represented him on appeal.  He has not cited any authority for the proposition that a represented defendant is also entitled to demand preparation of portions of the record beyond those requested by counsel.  To the extent there may be such authority, habeas relief is not available on a claim of this nature unless the state court adjudication was contrary to or an objectively unreasonable application of clearly established federal law as decided by the Supreme Court.  28 U.S.C. § 2254(d).  There would have to be clear Supreme Court precedent in Petitioner's favor, and he has not cited any.  Furthermore, a defendant is not entitled to a free transcript for post-conviction purposes unless he demonstrates that he needs the record to establish a non-frivolous post-conviction claim.  Smith v. Beto, 472 F.2d 164 (5th Cir. 1973).  Petitioner has not shown any likelihood that he could have presented a non-

frivolous claim even if he had a transcript of the voir dire.  Counsel's affidavit testimony (and the supporting statements at trial by counsel and the court) that the trial judge did rule on and deny the challenge for cause undermines the post-conviction claim that Petitioner says he wanted to pursue.  He is not entitled to relief on this claim.

**<u>Brady</u> Claim**

Petitioner's Claim #10 argues that the prosecuting attorney withheld favorable evidence that would show Petitioner "never pulled a firearm."  Ladell Floyd, the teller who was robbed, testified that Petitioner lifted his shirt and showed her the black handle of a handgun to back his demand for money.  That testimony was the basis for the armed robbery and use of firearm conviction.  Another witness, Loretta Clark, testified that she was waiting on traffic to clear at the nearby County Market when Petitioner ran into the side of her truck. She said that she saw him "running with a gun in his hand and the pink smoke going everywhere."  Tr. 174.

Petitioner argues in Claim #10 that the district attorney knew Ms. Clark's testimony was false because surveillance video from outside the bank would show that he did not draw his weapon.  Petitioner contends this would be evident from "the unedited film" and favor the defense.

The suppression by the prosecution of evidence favorable to an accused can violate due process.  <u>Brady v. Maryland</u>, 83 S.Ct. 1194 (1963). To establish a <u>Brady</u> claim a petitioner must establish that the evidence was (1) suppressed, (2) favorable, and (3) material. <u>Wright v. Quarterman</u>, 470 F.3d 581, 591 (5th Cir. 2006).  Evidence is material if it "could

reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Kyles v. Whitley, 115 S.Ct. 1555, 1566 (1995).

Judge Pitman stated that the surveillance video was shown at trial, and Petitioner had not presented any factual support for his extreme accusation that the State withheld or tampered with evidence.  Tr. 609.  Petitioner has yet to present any factual support for his bold allegation.  In any event, it was not necessary to his conviction that he have drawn his gun or held it as he ran across nearby property when fleeing the bank.  The crucial evidence was the testimony that he brandished the weapon when he demanded money from the teller. Petitioner has not shown that there was any evidence suppressed or, assuming such evidence existed, that it was material within the meaning of Brady.

**Trial Judge Bias**

Petitioner argues in Claim #6 that Judge Scott Crichton erred in not recusing himself because he was the prosecuting attorney in Petitioner's prior conviction for manslaughter. Judge Pitman denied the claim on post-conviction, with a citation to State v. Connolly, 930 So.2d 951 (La. 2006), which includes the statement that the Supreme Court of Louisiana "has not required a trial judge to recuse himself from a case on grounds that he had previously prosecuted the defendant in a prior, unrelated case, and therefore might harbor some bias or prejudice against the defendant for that reason alone."  Petitioner has not cited any federal authority that would serve as a basis for this claim, and the Fifth Circuit has rejected a habeas claim based on an argument the trial judge violated state law by not recusing himself.  Reese v. Cain, 265 Fed. Appx. 230, 232 (5th Cir. 2008).  Even if Petitioner had presented and

exhausted this as a federal claim, relief would be available only if a state court adjudication violated clearly established law as established by the Supreme Court.  That Court has found that a judge's failure to recuse constitutes presumptive bias in three limited situations, none of which apply here.  Richardson v. Quarterman, 537 F.3d 466, 475 (5th Cir. 2008) (denying habeas based on claim that judge should have recused himself based on his wife's relationship with the victim).

Petitioner argues in Claim #5 that the trial judge was biased because he did not advise Petitioner of the contents of a pre-sentence investigation report before he imposed sentence. He contends that this violated the spirit of La. C. Cr. P. art. 877(B), which provides that the court "may" advise the defendant or his counsel of the contents of the report before imposing sentence.  Petitioner argues that if he had notice of the contents of the report he would have had an opportunity to refute "certain allegations" and correct an unspecified "incorrect statement."

Petitioner has not presented this claim as based on federal constitutional law.  And his unhappiness that the trial judge did not exercise his discretion to share the report before sentencing, which he was not required to do under state law, does not come close to establishing the sort of bias that might permit habeas relief.

**Ineffective Assistance of Counsel**

### A.  Introduction; Burden

Petitioner's remaining claims are based on assertions of ineffective assistance of counsel.  To prevail on such a claim, a petitioner must establish both that his counsel's

performance fell below an objective standard of reasonableness and that, had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different.  Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984).

Petitioner's claim were adjudicated and denied on the merits by the state court, so 28 U.S.C. § 2254(d) directs that the question is not whether a federal court believes the state court's determinations under the Strickland standard were incorrect but whether the determinations were unreasonable, which is a substantially higher threshold. Schriro v. Landrigan, 127 S.Ct. 1933, 1939 ( 2007).  The Strickland standard is a general standard, so a state court has even more latitude to reasonably determine that a defendant has not satisfied it. The federal court's review is thus "doubly deferential." Knowles v. Mirzayance,129 S.Ct. 1411, 1420 (2009).

"If this standard is difficult to meet, that is because it was meant to be."  Harrington v. Richter, 131 S.Ct. 770, 786 (2011).  Section 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and reaches only "extreme malfunctions" in the state criminal justice system.  Id.  Thus, "even a strong case for relief  does not mean the state court's contrary conclusion was unreasonable." Id.

### B.  Analysis

Petitioner argues that his trial counsel was ineffective because he did not properly challenge the use of the prior manslaughter conviction at the habitual offender hearing on the grounds that the State did not prove a release date.  Petitioner makes a similar argument that appellate counsel was ineffective for not arguing that the State was obligated to prove the

actual discharge date from parole and to supervision. These claims are meritless for the reasons stated above with respect to the habitual offender sentence. The State was not obligated to prove that Petitioner's release date had arrived and that the cleaning period had begun. Petitioner was susceptible to an habitual offender enhancement even if the cleansing period had not commenced. Petitioner himself admitted that he was still on parole at the time he committed the second offense. The arguments that Petitioner faults counsel for not making would have been meritless, and failure of counsel to make meritless arguments is not ineffective assistance. Johnson v. Cockrell, 306 F.3d 249, 255 (5th Cir. 2002); Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994).

Petitioner filed a pro se motion to recuse the district attorney's office. Petitioner represented that he had been twice acquitted in Caddo courts and filed two federal lawsuits against members of the prosecutor's office. Tr. 53-54. He argues in claim #8 that his appointed counsel was ineffective because he did not argue this motion on behalf of Petitioner. Petitioner adds in his habeas petition that Stan Lockard was an assistant district attorney who prosecuted Petitioner in a second-degree murder trial, at which Petitioner was acquitted. Lockard later moved to the public defender office, where he worked at the time that office was representing Petitioner in this case. Petitioner argues that the district attorney's office could not be impartial based on its relationship with Lockard.

Petitioner makes a related argument in Claim #9 that counsel was ineffective in not objecting to the denial of his motion to recuse the entire public defender office because of Lockard. Defense counsel testifies in an affidavit that Stan Lockard, although employed at

the public defender's office, "had no involvement in or knowledge of the instant case, nor did he have any access to any of Mr. King's records."  Thus, it was counsel's opinion that there was no basis to recuse his office from the case.

These claims lack merit.  Petitioner has not demonstrated that there was any factual basis to support recusal of the prosecutor or defender's office based on Mr. Lockard's association with them.  There is no reason to believe that if counsel had argued these motions to the best of his ability that they would have had any success.  Furthermore, the prosecutor and defense attorneys would have been replaced with others, who would have gone to trial with the overwhelming evidence of guilt, including Petitioner's admission of guilt.  There is, therefore, no basis to find prejudice within the meaning of <u>Strickland</u>.  <u>See</u> <u>Pickney v. Cain</u>, 337 F.3d 542 (5th Cir. 2003) (petitioner could not show <u>Strickland</u> prejudice based on counsel's not moving to quash indictment when a properly constituted grand jury would have also indicted based on the strong evidence of guilt).

Accordingly,

**IT IS RECOMMENDED** that Petitioner's petition for writ of habeas corpus be denied.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another

party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b).  Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 21st day of July, 2015.



Mark L. Hornsby
U.S. Magistrate Judge